**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VIA CHRISTI REGIONAL MEDICAL CENTER**<br>3600 E. Harry St<br>Wichita, KS 67218 | ) |
| **ST. JOSEPH MEDICAL CENTER**<br>3600 E. Harry Street<br>Wichita, KS 67218 | ) |
| **Plaintiffs,** | ) |
| **v.** | ) |
| **SYLVIA M. BURWELL,** Secretary of<br>the U.S. Department of Health and<br>Human Services | ) |
| **Defendant.** | ) |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT**

## JURISDICTION AND VENUE

1. This is a civil action brought to obtain judicial review of a final decision rendered on September 26, 2016 by the Provider Reimbursement Review Board ("PRRB"), acting as a component of the United States Department of Health and Human Services ("HHS"). The decision for which judicial review is hereby sought is PRRB Case No. 99-2300GC, entitled, "Via Christi 90-94 DSH/SSI Proxy Group."

2. This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

3. This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

4. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

**PARTIES**

5. Plaintiffs named herein (hereinafter, "Plaintiffs", "Plaintiff Providers" or "Providers") are each acute care, in-patient healthcare facilities that serve a disproportionate share of low-income patients.

The following are Plaintiffs in this case:

| Provider | Medicare Provider No. | Fiscal Year Ending |
|---|---|---|
| **Via Christi Regional Medical Center** | **17-0122** | **09/30/1996**<br>**09/30/1995**<br>**09/30/1994**<br>**09/30/1993** |
| **St. Joseph Medical Center** | **17-0087** | **09/30/1995**<br>**09/30/1993**<br>**09/30/1992**<br>**09/30/1991**<br>**09/30/1990** |

6. At all relevant times, each Plaintiff Provider herein (hereinafter, collectively referred to as the "Providers") had Medicare provider agreements with the Secretary of

the U.S. Department of Health and Human Services (hereinafter, the "Secretary"), and were eligible to participate in the Medicare program.

7. Furthermore, this Court has jurisdiction over Plaintiff Providers' claims, pursuant to 42 U.S.C. §1395oo because:

a. Providers filed cost reports as required by 42 U.S.C. §1395oo(a);

b. Providers were dissatisfied with its fiscal Intermediary's final determinations, "…as to the amount of total program reimbursement due the provider… for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

c. The amount in controversy for each Provider exceeds $10,000, as required by 42 U.S.C. §1395oo(a)(3);

d. Providers timely filed appeals with the Provider Reimbursement Review Board pursuant to 42 U.S.C. §1395oo(a)(3);

e. Despite and in response to Providers' appeals seeking Board determinations, the Board nevertheless chose to issue standard remands sending Providers' matter back to the Intermediary for recalculation of Providers' DSH adjustments. The Board's decision was issued by way of an Order dated May 12, 2012.

f. Each Provider timely requested that the PRRB reconsider its Order of Remand, and Each Provider requested a granting for Expedited Judicial Review ("EJR), those requests sent on March 7, 2016. *See,* **Exhibit "A"**

g. On or about September 26, 2016, by way of letter, the PRRB denied Providers' Request for Reconsideration and EJR. *See*, **Exhibit "B"** attached to this Complaint. Nevertheless, Plaintiff Providers seek to have this timely filed matter adjudged by this Court, and thus, file the instant complaint within sixty (60) days of what shall be the final decision of the Board.

h. Plaintiff, Providers have exhausted all administrative remedies under Federal law.

8. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1361 because the hospitals are entitled to a writ of mandamus requiring the Secretary to retract CMS Ruling 1498-R and to ensure that the Providers' Disproportionate Share Hospital eligibility and adjustments are calculated in accordance with the law.

9. This Court has jurisdiction to hear this case pursuant to either the Administrative Procedures Act, 5 U.S.C. §701 et seq., and/or the Declaratory Judgment Act, 28 U.S.C. §2201 because there is an actual controversy over the amounts to which the Providers were entitled to receive by way of their Medicare Disproportionate Share Hospital adjustments, and the Providers seek a determination that the Secretary's Ruling 1498-R is unlawful because it divests the Provider Reimbursement Review Board of jurisdiction over their timely appeals, and requires the Secretary's fiscal intermediaries to recalculate their DSH eligibility and adjustments in violation of the Medicare Act and the law of this Federal Judicial Circuit.

10. Defendant, Sylvia M. Burwell, Secretary of the Department of Health and Human Services ("Secretary"), or her predecessors in office, is the federal officer responsible for the administration of the Medicare program. Defendant Burwell is sued in her official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

11. The Medicare program was established to provide health insurance to the age and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

12. The operating costs of inpatient Provider services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). 42 U.S.C. §1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on Provider- specific factors. See 42 U.S.C. §1395ww(d)(5). This case involves the Provider-specific disproportionate share (DSH) adjustment, which requires the Secretary to provide increased PPS reimbursement to Providers that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

13. Whether a Provider qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the Provider's "disproportionate patient percentage (DPP)." 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a Provider's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Providers whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient Provider services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

14. The first fraction's numerator is the number of a Provider patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. Id. This case involves this first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare fraction.

15. The second fraction's numerator is the number of Provider patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the Provider's patient days for such period. Id. The second fraction is frequently referred to as the Medicaid fraction.

16. The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their Providerization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of Provider inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

17. In *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, as amended, 587 F. Supp. 2d 37,44 (D.D.C.2008) ("*Baystate*"), the United States District Court for the District of Columbia determined that the Secretary was not using the "best available data" to determine providers' SSI fractions. 545 F. Supp. 2d at 57-58. In order to correct the Secretary's errors, the Court specifically ordered the Secretary to:

a. Use patient social security numbers in the data matching process. 587 F. Supp. 2d at 40;

b. Use updated SSA records that become available before the time that the cost report at issue is settled. 545 F. Supp. 2d at 58;

c. Forced pay SSI records. *Id.*, and;

d. Inactive SSI records. *Id.*

18. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and regulations. 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the Intermediary calculates the DPP, it is CMS that computes the SSI fraction.

19. At the close of its fiscal year, a provider must submit a cost report to the fiscal Intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal Intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

20. A provider dissatisfied with the Intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (PRRB) or (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

**CMS RULING 1498-R**

21. On April 28, 2010, CMS issue Ruling 1498-R. This Ruling applies to appeals in any of the three following categories: 1) when a provider challenges CMS' data matching process for matching Medicare and SSI eligibility data in determining the SSI fraction; (2) when a provider challenges the exclusion from the disproportionate patient

percentage (DPP) of non-covered inpatient Provider days (for example, Medicare secondary payer (MSP) days or exhausted benefit (EB) days); or (3) when a provider challenges the exclusion from the DPP of labor/delivery room (LDR) inpatient days.

22. Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories must be remanded by the Board to the fiscal Intermediary. The Ruling further requires the fiscal Intermediary to revise the SSI fraction to include certain inpatient provider days (e.g. MSP and EB days) in the SSI fraction. The Ruling further requires the Intermediary to re-compute the SSI's fraction using the revised data matching process approved by the district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37, 44 D.D.C. 2008).

23. CMS-1498-R further states that re-computation of the SSI fraction in accordance with that directive -

> *eliminates any actual case or controversy regarding the Provider's previously calculated SSI fraction and DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the Provider's previously calculated SSI fraction, [p]rovided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements of section 1878 of the Act, the Medicare regulations, and other agency rules and guidelines.*

24. CMS Ruling 1498-R further provides as follows:

> *The Ruling provides notice of the determination of the Centers for Medicare & Medicaid Services (CMS) that the Provider Reimbursement Review Board (PRRB) and the other Medicare administrative appeals tribunals lack jurisdiction over provider appeals of any of three issues described [therein] regarding the calculation of the Medicare disproportionate share Provider (DSH) payment adjustment..*

25. The regulations at 42 C.F.R. §401.108 state that CMS Rulings are binding on all CMS components. With respect to the scope of the Board's legal authority, the regulation at 42 C.F.R. §405.1867 states that, ""[*i]n exercising its authority to conduct*

*proceedings... the Board must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in § 401.108* .... "

**SUBSTANTIVE INVALIDITY OF CMS RULING 1498-R**

26. CMS Ruling 1498-R is substantively invalid in that it requires the inclusion of certain additional days in the SSI fraction, such as exhausted benefit (EB) days, Medicare secondary payer (MSP) days, and potentially, HMO days.

27. The relevant statute requires entitlement to Part A as a condition of inclusion in the SSI fraction. With respect to EB days, the Medicare statute provides that the Part A benefit for inpatient Provider services covers only a specified number of days per spell of illness. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a). Therefore, payment under Part A may not be made for services rendered after those limits have been exhausted. 42 U.S.C. § 1395d(b)(1).

28. Similarly, under the Medicare MSP provisions, payment may not be made under Medicare Part A "*when payment has been made or can reasonably be expected to be made*" under a health insurance plan or liability insurance policy. 42 U.S.C. § 1395y(b)(2)(A). There is an exception under which CMS is authorized to make "conditional payments" if the primary payer has not made or cannot reasonably be expected to make prompt payment. However, upon receipt of payment from the primary payer, the beneficiary or provider must reimburse the Medicare trust fund for these conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

29. This statutory scheme clearly establishes that patients to whom the MSP and EB provisions are applied are not "entitled to benefits under Part A." In *Jewish Hosp. v.*

*Secretary of Health & Human Servs*., 19 F.3d 270 (6th Cir. 1994), the court held that the word "entitled" as used in the SSI fraction means that the beneficiary "*possesses the right or title to that benefit*." The court further stated that the "*Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment*." Id. at 275. See also *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1264 (9th Cir. 1996), in which the court noted that use of the term "entitled" refers to 'the absolute right to . . . payment.'" 97 F.3d at 1265 (quoting *Jewish Provider*).

30. This is also consistent with the Secretary's interpretation of whether a patient is entitled to benefits under the new Part D drug benefit program. CMS has stated as follows in this regard:

> *In other contexts, we generally have interpreted the concept of "entitled" to benefits to mean that an individual has met all of the necessary requirements for a benefit (that is, is eligible for the benefit), and has actually applied for and been granted coverage. *** Accordingly, we will deem an individual "entitled" to Part A, and thus a Part D eligible individual, if the individual is eligible for benefits under Part A, and has actually applied for and been granted coverage under Part A*
>
> 70 ed. Reg. 4194, 4202 (Jan. 28, 2005).

31. By definition, no payment can be made for EB days under Part A, and therefore a patient cannot be said to be entitled to such payment. Indeed, the Secretary has explicitly conceded that there is no entitlement to Part A benefits for EB days with respect to the Medicare DSH adjustment for "Medicare dependent, small rural Provider[s]." See 42 U.S.C. 1395ww(d)(5)(G)(iv)(IV).

32. In a 1990 final rule, the Secretary stated that individuals are "*entitled to benefits under [Medicare] part A*" only when they are entitled to have their medical services paid for under Medicare part A. The rule states that *"[e]ntitlement to payment under part A ceases after the beneficiary has used 90 days in a benefit period and has either exhausted*

*the lifetime reserve days or elected not to use available lifetime reserve days."* 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990). But *"[s]ince patients who have exhausted their part A benefits are no longer entitled to payment under part A,"* the Secretary concluded that, *"we do not believe such stays should be counted"* in the Medicare fraction. Id.

33. The same reasoning applies to MSP days in which payment is made by the primary payor, and not the Medicare program. In such cases, the absence of a Part A payment clearly means that an individual is not "entitled" to such payment. Indeed, inpatient psychiatric Provider and skilled nursing care that is paid for by a primary payer is not counted against the number of inpatient care days available to the beneficiary under Medicare Part A. 42 C.F.R. § 411.30(a). Presumably, these days would be counted against a beneficiary's available benefit days if the beneficiary was "entitled" to payment for those days from Medicare. Moreover, the conditional payments which may be made under the MSP rules do not establish an "absolute, independent" right to payment under Part A." *Jewish Hosp. v. Secretary of Health & Human Servs*.

34. The Secretary has further stated that managed care days governed by 42 U.S.C. §1395mm are also days for which a patient is entitled to benefits under Part A. However, contrary to the Secretary's view, no Medicare Part A payment is made to cover services rendered to managed care patients, and as such these managed care patients are not entitled to benefits under Part A.

35. The revised matching methodology mandated by CMS 1498-R also does not address the matching deficiencies identified by the federal district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37, 44

(D.D.C. 2008). For example, the procedure by which CMS matches SSI entitlement records to Medicare inpatient data (a) fails to match SSI eligible beneficiaries who do not receive Title II numbers; (b) fails to use multiple identifiers; (c) fails to match on a unique identifier; and (d) fails to match SSI eligible beneficiaries whose Title II number changes within the year. Further, the *Baystate* litigation also found that the SSI data used for the Medicare percentage numerator is incomplete in that it omits the following SSI eligible beneficiary records: (a) prior to Federal Fiscal Year 1995, inactive SSI records (stale records); (b) records relating to individuals who received a forced or manual payment; (c) records of individuals whose benefits were temporarily on hold or in suspense when SSA ran the tape for CMS; (d) records of SSI days associated with individuals whose benefits were granted or restored retroactively after SSA ran each year's tape and (e) records of individuals entitled to non-cash SSI benefits. These deficiencies have not been properly addressed by the revised matching methodology mandated by CMS 1498-R.

36. Under the revised matching methodology mandated under CMS 1498-R, the Medicare Enrollment Database (EDB) will be used for the purpose of matching social security numbers of individuals entitled to Medicare benefits to individuals who are also receiving SSI benefits.

37. However, information in the EDB is not retrievable by individual social security numbers. The Federal Register Privacy A ct notices states that information in the EDB is retrievable by Health Insurance Claim (HIC) number or name search. The official description of the EDB states that the records in the system include the "*individual's health insurance numbers, name, geographic location, race/ethnicity, sex, and date of birth*." There is no indication from the Federal Register notices that Social Security

numbers are included in the EDB. See 67 Fed. Reg. 3203, January 23, 2002; 73 Fed. Reg. 10249, February 26, 2008.

38. As a result, CMS 1498-R does not address one of the key matching deficiencies identified by the district court in *Baystate*, i.e., the failure to match Medicare and SSI records on the basis of Social Security numbers.

39. Further, records in the EDB are maintained for only a period of 15 years. As some of the cost years in this case go back further than 15 years, the revised matching process contemplated by CMS 1498-R cannot possibly be implemented in this case.

40. Moreover, there are substantive deficiencies in the records maintained by the Social Security Administration (SSA) which CMS 1498-R fails to address. CMS states that "*Codes beginning with the letter "S" reflect records that are in a "suspended" status and, according to SSA, do not represent individuals who are entitled to SSI benefits.*" The S codes will be changed to an active code upon the making of a retroactive entitlement determination. However, this change is only reflected on SSA's records for the month in which the retroactive SSI payment is actually made, and not for any prior months which were in a suspended status. Thus, the match will identify entitlement only for the month in which the retroactive payment is actually made, and not for any prior months which the retroactive payment was intended to cover.

41. Similarly, Code S-06 is applied where the payment was suspended because "recipient's address is unknown". The fact that a recipient's address is unknown is not a reason for denying payment under the applicable regulations. An otherwise eligible individual is "entitled" to SSI benefits unless the reason for non-payment is one of the reasons specified in the applicable regulations. See 20 C.F.R. §§ 416.207 – 416.216. As

the fact that a recipient's address is unknown is not one of the reasons specified in 20 C.F.R. §§ 416.207 – 416.216, these individuals should be placed in an active code status, so that the revised matching program will include them in the SSI fraction. Once again, CMS 1498-R does not address this deficiency in the process of formulating the SSI fraction.

**PROCEDURAL INVALIDITY OF CMS 1498-R**

42. CMS 1498-R purports to divest the Board of jurisdiction over the categories of appeals covered by that Ruling. However, this policy is incompatible with the requirement that the Board remand cases subject to CMS 1498-R back to the Intermediary for re-computation of the SSI fraction.

43. It is well established that once a tribunal has determined that it lacks jurisdiction over a matter, its only option is to dismiss without prejudice. Under the Secretary's regulations, a dismissal for lack of jurisdiction is a final decision which is immediately subject to judicial review, while a remand is an interlocutory decision which is not immediately appealable. See 42 C.F.R. § 405.1875(e)(4)(iii) (decision by the administrator remanding a matter to the Board for further proceedings [i]s not a final decision for purposes of judicial review). See also 42 C.F.R. § 405.1877(b)(3)(ii) (precluding judicial review of an Administrator's remand order).

44. Accordingly, CMS 1498-R is procedurally invalid because it purports to divest the Board of jurisdiction, while at the same time requiring the Board to remand to the Intermediary.

45. Moreover, the Secretary exceeded the scope of her statutory authority in promulgating a carte blanche rule which purports to divest the Board of jurisdiction over

the three categories of appeals subject to CMS 1498-R. The PRRB has the inherent right as an administrative tribunal created by Congress to make determinations as to its own jurisdiction under the facts of each specific case. The Secretary's preemption of the PRRB's prerogative to determine its own jurisdiction constituted a violation of the organic statute under which the Board operates. See 42 U.S.C. §1395oo.

46. CMS Ruling 1498-R purports to divest the Board of jurisdiction based on the premise that including all "non-covered" days in the SSI fraction eliminates any "controversy" concerning this issue, and thereby renders "moot" all pending appeals. However, plaintiffs in this case are claiming "non-covered" days as part of the Medicaid fraction, and not the SSI fraction. As a result, CMS Ruling 1498-R does not eliminate the "controversy" concerning whether non-covered days should be included in the SSI or the Medicaid fraction.

47. Additionally, the Secretary's authority under 42 U.S.C. §1395oo is limited to "reversal, affirmance, or modification" of a Board decision. This language does not encompass the authority to order the Board to remand back to the Intermediary, as required by Ruling 1498-R. The Board is also not given the authority under 42 U.S.C. §1395oo to order a remand back to the Intermediary. Some of the cost years at issue in this case are nearly twenty years old. As a result of CMS 1498-R, the provider has still not received the final agency determination required to trigger its judicial review rights.

**CMS 1498-R WAS INVALIDLY PROMULGATED**

48. It is well settled that an agency may not promulgate a retroactive rule absent express congressional authorization. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Moreover, once an agency gives its interpretation to a regulation, it can

only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking under 5 U.S.C. § 553. *Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997).

49. Ruling 1498-R explicitly concedes that CMS has changed policies on whether "non-covered" days may be included in the SSI fraction. The Ruling states that it was not until 2005 that CMS determined that "non-covered" days could be included in the SSI fraction.[1] Prior thereto, the Secretary interpreted the term "entitled" to mean "covered" or "paid." *See* 69 Fed. Reg. 48916, 49098-99 (Aug. 11, 2004) (discussing October 1, 2004 as the date to *begin* counting exhausted benefit days in the Medicare/SSI fraction); *see also* 70 Fed. Reg. 47278, 47441 (Aug. 12, 2005) (explaining that CMS's "policy change" with respect to Medicare secondary payor days applies to "FY 2005 and subsequent years"). See also *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 (fn. 5) (D.C. Cir. 2013).

50. The days in question in the present case were non-covered days which occurred prior to 2005. As such, these days would have been excluded from the SSI fraction applying the regulations in effect when the inpatient stays actually occurred. Therefore, remanding these days for inclusion in the SSI fraction under 1498-R constitutes retroactive rulemaking.

**<u>Improper Inclusion of Non-Covered Days in the SSI Fraction</u>**

1 Ruling 1498-R states as follows: "*Under CMS' original policy, inpatient days were included in the numerator of the DSH SSI fraction <u>only</u> if the inpatient Provider days were "covered" under Medicare Part A and the patient was entitled to SSI benefits; Part A coverage of inpatient days alone was required for inclusion in the denominator of the SSI fraction. See, e.g., 42 C.F.R. § 412.106(b)(2)(i) (2003).*"

51. To summarize, and prior to October 1, 2004, the Secretary's regulations excluded non-covered days from the Medicare fraction; i.e., days not paid by Medicare Part A. *Catholic Health Initiatives Iowa Corp. v. Sebelius,* 718 F.3d 914, 921 (D.C. Cir. 2013), at fn. 5. In the August 11, 2004 final rule, effective with respect to patient discharges on or after October 1, 2004, the Secretary deleted the word, "covered" where it previously appeared in the definition of the Medicare fraction in 42 C.F.R. § 412.106(b)(2)(i). 69 Fed. Reg. 48916, 49245, August 11, 2004. The deletion of the term, "covered" reflected the Secretary's intent to begin including in the Medicare fraction days not actually paid under Medicare Part A.

52. The DSH statue requires that a patient be "entitled" to benefits under Part A as a condition of inclusion in the SSI fraction. In *Jewish Hosp. v. Secretary of Health & Human Servs.,* 19 F.3d 270 (6th Cir. 1994), the court held that the word, "entitled" as used in the SSI fraction meant that the beneficiary "*possesses the right or title to that benefit.*" The court further stated that the "*Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment.*" Id. At 275. *See* also, *Legacy Emanuel Hosp., supra,* in which the court noted that use of the term, "entitled" refers to the 'absolute right to… payment." *supra,* at 1265 (quoting *Jewish Hospital*).

53. By it very definition, Medicare Part A makes no payment for non-covered days, and therefore a patient cannot be said to be entitled to benefits under part A. Accordingly, the Secretary's regulations mandating inclusion in the SSI fraction are inconsistent with the plain language of the DSH statute.

54. The Secretary's 2004 regulations mandating inclusion of non-covered days in the SSI fraction were not the product of adequate notice and comment rule making. The

publication requirements of the Medicare Act also provide that "*no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation*." 42 U.S.C. § 1395hh(a)(2). The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability. 42 U.S.C. § 1395hh(c). The Freedom of Information Act ("FOIA") similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability. 5 U.S.C. §552(a)(1)(D).

55. The policy contained in CMS 1498-R falls within the ambit of the publication requirements of 42 U.S.C. § 1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D). The Secretary's failure to publish CMS Ruling 1498-R until after the cost years at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS 1498-R to the Providers in this case. 42 U.S.C. § 1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).

**SPECIFIC FACTS PERTAINING TO THIS CASE**

56. In their appeals to the PRRB, Plaintiff Providers argued that CMS computation of Provider's SSI percentage failed to reconcile with each of those facility's patient records, as well as SSI entitlement data obtained from State Medicaid agencies and the Social Security Administration itself. Providers further argued that CMS used a flawed match procedure in attempting to identify which of the Providers' inpatients were entitled to SSI benefits. Providers also contended that the procedure mandated by CMS 1498-R was

incorrect because it required inclusion of days not covered by Medicare Part A in the Providers' SSI fraction. The PRRB's decision dated February 4, 2015 denied these appeals, and instead remanded the case back to the Intermediary pursuant to the Board's standard CMS 1498-R remand order.

57. A Board's dismissal decision based on lack of jurisdiction is a final appealable agency decision. 42 C.F.R. §405.1840(a)(5).

**COUNT I**

58. The allegations in Paragraphs 1-57 are incorporated as if fully set forth herein.

59. CMS Ruling 1498-R requires the inclusion of non-covered inpatient Provider days in the SSI fraction, including MSP and EB days. Inclusion of these days in the SSI fraction is illegal because it is contrary to the plain language of the statute, and is also inconsistent with the Secretary's practice during the time periods relevant to this appeal.

60. Upon remand, the Secretary has stated that managed care days will also be included in the SSI fraction. Inclusion of managed care days in the SSI fraction is also illegal because it was inconsistent with the Secretary's practice during the time periods relevant to this appeal and because it would also be inconsistent with the plain language of the statute

61. The Board's decision remanding the Providers' appeals back to the Intermediary for inclusion of MSP, EB and managed care days in the SSI fraction, as required by CMS Ruling 1498-R, was arbitrary and capricious and not in accordance with law. 5 U.S.C. §706(2)(A).

**COUNT II**

62. The allegations in Paragraphs 1-61 are incorporated as if fully set forth herein.

63. CMS 1498-R is substantively invalid because it fails to address the matching deficiencies outlined in the *Baystate* decision, such as the failure to use Social Security numbers in the matching process.

64. CMS Ruling 1498-R is substantively invalid because the revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status.

65. CMS Ruling 1498-R is substantively invalid because under the revised matching process, individuals are "entitled" to SSI only when they actually receive a SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare.

66. CMS Ruling 1498-R is substantively invalid because individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months which the retroactive payment was intended to cover.

67. CMS Ruling 1498-R is substantively invalid because the SSA no longer maintains records pertaining to the SSI eligibility of the Providers' inpatients as a result of the SSA's record retention policy.

68. The Board's decision remanding the Providers' appeals back to the Intermediary to re-compute the SSI fraction using the revised matching methodology mandated by that Ruling was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

**COUNT III**

69. The allegations in Paragraphs 1-68 are incorporated as if fully set forth herein.

70. CMS Ruling 1498-R is invalid in that it (a) purports to divest the Board of jurisdiction over the present appeal in a manner not authorized by the Board's organic statute; (b) requires remand to the Intermediary when the Board's organic statute does not authorize such remands; and (c) is based on the flawed premise that the Ruling renders "*moot*" pending appeals related to the SSI fraction.

71. The Board's Ruling remanding the Providers' appeals back to the Intermediary as required by CMS Ruling 1498-R was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

**<u>COUNT IV</u>**

72. The allegations in Paragraphs 1-71 are incorporated as if fully set forth herein.

73. CMS Ruling 1498-R constitutes a retroactive rule. It is well established that retroactive rules may not be enforced absent express Congressional authorization. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). There is no such Congressional authorization in this case.

74. The enforcement of CMS Ruling 1498-R against Providers was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

**<u>COUNT V</u>**

75. The allegations in Paragraphs 1-74 are incorporated as if fully set forth herein.

76. Failure to make publication of CMS 1498-R in the Federal Register constituted a violation of the notice and comment provisions of the Administrative Procedures Act and the Medicare Act. 5 U.S.C. §553; 42 U.S.C. §1395hh(b)(1). The Secretary also violated the provisions of the Administrative Procedures Act and the Medicare Act by failing to

give notice in the Federal Register of the existence of CMS 1498-R as a general statement of policy or interpretive rule. 42 U.S.C. §1395hh(c); 5 U.S.C. §552(a)(1)(D).

77. Accordingly, the enforcement of CMS Ruling 1498-R against Provider was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

**COUNT VI**

78. The allegations in Paragraphs 1-77 are incorporated as if fully set forth herein.

79. The remands contemplated by CMS Ruling 1498-R effectively frustrate through delay the judicial review procedures authorized under the 42 U.S.C. §1395oo(f). Some of the cost years at issue in this case are nearly twenty years old. As a result of CMS 1498-R, Provider has still not received the final agency determination required to trigger its judicial review rights. Delays of this magnitude effectively equate to a denial of procedural due process.

80. Accordingly, the enforcement of CMS Ruling 1498-R against Providers was arbitrary and capricious and otherwise not in accordance with law (5 U.S.C. §706(2)(A)), as well as in violation of the Due Process clause of the U.S. Constitution.

**COUNT VII**

81. The allegations in Paragraphs 1-80 are incorporated as if fully set forth herein.

82. Pursuant to 5 U.S.C. §706(1), this Court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." The agency action being withheld in this case is a final agency decision sufficient to trigger the judicial review rights created by 42 U.S.C. §1395oo(f). The Secretary has a non-discretionary duty to issue final agency decisions within a reasonable period of time. As there are no alternative legal remedies available to Plaintiffs, a writ of mandamus pursuant to 5 U.S.C. §706(1) and 28 U.S.C. §

1361 should be issued for the purpose of directing the Secretary to issue a prompt final agency decision.

**COUNT VIII**

83. The allegations in Paragraphs 1-82 are incorporated as if fully set forth herein.

84. The Secretary has a non-discretionary obligation to furnish Plaintiffs with access to the MEDPAR data, which would permit it to identify additional patients entitled to SSI. There are no legal remedies available to Plaintiffs to compel disclosure by the Secretary of the MEDPAR data. As such, Plaintiffs are entitled to a writ of mandamus pursuant to 5 U.S.C. §706(1) and 28 U.S.C. § 1361, directing the Secretary to furnish such MEDPAR data to the Plaintiffs.

85. The Secretary also has a non-discretionary duty to provide access to providers to the SSI entitlement data which is furnished to the Secretary by the Social Security Administration. Section 951 of the Medicare Prescription Drug, Improvement and Modernization Act ("MMA") of 2003, Pub. L. No. 108-173 (2003) required HHS to arrange by December 8, 2004 to furnish providers with the data necessary to compute the number of patient days used in calculating the disproportionate patient percentage. The requirements of Section 951 may be satisfied only by furnishing providers with access to the SSI entitlement files which are provided by the Social Security Administration to the Secretary of Health and Human Services. There are no legal remedies available to Plaintiff to compel disclosure by the Secretary of the data falling within the purview of Section 951 of the MMA. As such, Plaintiff is entitled to a writ of mandamus pursuant to 28 U.S.C. §1361, directing the Secretary to furnish to Plaintiffs such data as is required so that each Plaintiff may compute its own SSI fractions.

## COUNT IX

86. The allegations in Paragraphs 1-85 are incorporated as if fully set forth herein.

87. The PRRB denied the providers request for expedited judicial review on the basis that it lacks jurisdiction over these appeals pursuant to CMS 1498-R. However, these appeals satisfied all of the prerequisites which are required to trigger PRRB jurisdiction. Therefore, the Board had jurisdiction over these appeals notwithstanding the provisions of CMS 1498-R.

88. As such, the Board's denial of expedited judicial review was arbitrary and capricious and not in accordance with law. 5 U.S.C. §706(2)(A).

## COUNT X

89. The allegations in Paragraphs 1-88 are incorporated as if fully set forth herein.

90. CMS is prohibited from directing the Intermediary to re-open an Intermediary final determination where, as in this case, there has been a "change of legal interpretation or policy by CMS in a ... CMS Ruling….whether made in response to judicial precedent or otherwise." 42 C.F.R. §§ 405.1885. These regulations further prohibit reopening of any Intermediary determination more than three years after that determination has been issued. Id.

91. The Board's action in remanding pursuant to CMS 1498-R was arbitrary, capricious and in violation of law because the reopening in this case resulted from a change in legal interpretation as reflected in that Ruling, and because the determinations being reopened were more than three years old at the time of reopening. 5 U.S.C. §706(2)(A).

## COUNT XI

92. The allegations in Paragraphs 1-91 are incorporated as if fully set forth herein.

93. Medicare HMO days (42 U.S. C. §1395mm) and Part C days (42 U.S.C. §1395w-21) must be excluded from the Medicare fraction and included in the Medicaid fraction for the periods at issue in this case. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014); *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011).

94. The remand procedure mandated by CMS 1498-R is arbitrary and capricious and contrary to law because it fails to require exclusion of HMO and Part C days from the Medicare fraction (and inclusion of these days in the Medicaid fraction) in computing the revised SSI fractions. 5 U.S.C. §706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

(a) For an order reversing and setting aside the decision of the PRRB;

(b) For an order declaring that CMS Ruling 1498-R is both substantively and procedurally invalid, and that the Board's action in remanding the Providers' appeals back to the Intermediary pursuant to CMS 1498-R is arbitrary and capricious and contrary to law;

(c) For an order requiring the Secretary to promptly issue a final agency decision sufficient to trigger the Providers' judicial review rights;

(d) For an order directing the Secretary to provide MEDPAR data to Plaintiffs and directing the Secretary to provide such additional data so as to enable each Plaintiff to compute its own SSI fraction;

(e) For an order invalidating the improperly dismissed claims set forth, above, for alleged violations of the Rules and Regulations of the Centers for Medicare and Medicaid;

(f) For an order invalidating the improperly dismissed claims set forth, above, for alleged violations of the Rules and Regulations of the Centers for Medicare and Medicaid;

(g) For an Order holding that Provider's Requests Reconsideration for Expedited Judicial Review were warranted and appropriate;

(h) For the costs of this suit incurred by Plaintiffs and;

(i) For such other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 25, 2016

Respectfully submitted,

*Alan J. Sedley*

Alan J. Sedley, APLC
(Bar No. OH0017)
SEDLEY HEALTH LAW GROUP
19900 MacArthur Boulevard
Suite 1150
Irvine, CA 92612
Phone: 949.502.5399
asedley@smhealthlaw.com
Counsel for Plaintiff Providers